## RICE *v.* SIOUX CITY MEMORIAL PARK CEMETERY, INC. ET AL.

No. 28.   Decided May 9, 1955.

*Neil R. McCluhan* and *Lowell C. Kindig* for petitioner.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is an action for damages brought by plaintiff, petitioner here, in the District Court of Woodbury County, Iowa, to compensate her for mental suffering claimed to flow from defendant cemetery's refusal to bury her husband, a Winnebago Indian, after services had been conducted at the grave site and the burial party had disbanded. Plaintiff founded her action, so far as here relevant, on breach of a contract whereby defendant had undertaken to afford plaintiff "Right of Sepulture" in a specified lot of its cemetery. The contract of sale of the burial lot also provided that

> "burial privileges accrue only to members of the Caucasian race."

Plaintiff asserted that this provision was void under both the Iowa and the United States Constitutions and that recognition of its validity would violate the Fourteenth Amendment. By an amendment to the complaint, plaintiff also claimed a violation of the United Nations Charter. The defense was anchored in the validity of the clause as a bar to this action.

After an abortive attempt to remove the case to the federal courts, 102 F. Supp. 658, defendants moved to dismiss the amended petition in the state court. This motion was denied, except that insofar as the amendment to the petition had relied on the United Nations Charter, the amendment was dismissed. Following Iowa procedure, the trial court entertained motions by both parties requesting it to adjudicate prior to trial points of law relating to the effect of the restrictive covenant. The Iowa court ruled that the clause was not void but was unenforceable as a violation of the Constitutions and public policy of Iowa and the United States. Neverthe-

less, it held that the clause "may be relied upon as a defense" and that "the action of a State or Federal court in permitting a defendant to stand upon the terms of its contract and to defend this action in court would not constitute state or federal action" contrary to the Fifth and Fourteenth Amendments. It again ruled that the United Nations Charter was irrelevant, and the case was finally dismissed.

The Supreme Court of Iowa affirmed, reasoning that the decision of this Court in *Shelley* v. *Kraemer,* 334 U. S. 1, when considered in conjunction with the *Civil Rights Cases,* 109 U. S. 3, did not require a state court to ignore such a provision in a contract when raised as a defense and in effect to reform the contract by enforcing it without regard to the clause. The court further ruled that the provisions of the United Nations Charter "have no bearing on the case" and that none of the grounds based on local law sustained the action. 245 Iowa 147, 60 N. W. 2d 110. We granted certiorari, 347 U. S. 942.

The basis for petitioner's resort to this Court was primarily the Fourteenth Amendment, through the Due Process and Equal Protection Clauses. Only if a State deprives any person or denies him enforcement of a right guaranteed by the Fourteenth Amendment can its protection be invoked. Such a claim involves the threshold problem whether, in the circumstances of this case, what Iowa, through its courts, did amounted to "state action." This is a complicated problem which for long has divided opinion in this Court. See, *e. g., Raymond* v. *Chicago Traction Co.,* 207 U. S. 20; *Snowden* v. *Hughes,* 321 U. S. 1; *Terry* v. *Adams,* 345 U. S. 461. See also, *Barrows* v. *Jackson,* 346 U. S. 249. Were this hurdle cleared, the ultimate substantive question, whether in the circumstances of this case the action complained of was condemned by the Fourteenth Amendment, would in turn present no easy constitutional problem.

The case was argued here and the stark fact is that the Court was evenly divided. 348 U. S. 880. In accordance with undeviating practice, no indication was given regarding the grounds of this division.

In addition to the familiar though vexing problems of constitutional law, there was reference in the opinions of the Iowa courts and in the briefs of counsel to the United Nations Charter. The Iowa courts dismissed summarily the claim that some of the general and hortatory language of this Treaty, which so far as the United States is concerned is itself an exercise of the treaty-making power under the Constitution, constituted a limitation on the rights of the States and of persons otherwise reserved to them under the Constitution. It is a redundancy to add that there is, of course, no basis for any inference that the division of this Court reflected any diversity of opinion on this question.

Following our affirmance by necessity of the decision of the Iowa Supreme Court, a petition was filed for a rehearing before a full Court. In our consideration of this petition our attention has now been focused upon an Iowa statute enacted since the commencement of this litigation. Though it was in existence at the time the case first came here, it was then not seen in proper focus because blanketed by the issues of "state action" and constitutional power for which our interest was enlisted. This Iowa statute bars the ultimate question presented in this case from again arising in that State. In light of this fact and the standards governing the exercise of our discretionary power of review upon writ of certiorari, we have considered anew whether this case is one in which "there are special and important reasons" for granting the writ of certiorari, as required by Supreme Court Rule 19.

This Rule, formulated thirty years ago, embodies the criteria, developed ever since the Evarts Act of 1891, by which the Court determines whether a particular case

74

merits consideration, with due regard to the proper functioning of the limited reviewing power to which this Court is confined, decisively restricted through the creation of the intermediate Courts of Appeals and more largely confined by the Judiciary Act of 1925. In illustrating the character of reasons which may be deemed "special and important," the Rule refers to cases

> "Where a state court has decided a federal question of substance not theretofore determined by this court, or has decided it in a way probably not in accord with applicable decisions of this court."

A federal question raised by a petitioner may be "of substance" in the sense that, abstractly considered, it may present an intellectually interesting and solid problem. But this Court does not sit to satisfy a scholarly interest in such issues. Nor does it sit for the benefit of the particular litigants. (*Magnum Import Co.* v. *Coty*, 262 U. S. 159, 163; see also Address of Mr. Chief Justice Vinson, before the American Bar Association, Sept. 7, 1949, 69 Sup. Ct. v, vi; Address of Mr. Chief Justice Hughes, before the American Law Institute, May 10, 1934, XI Proc. Am. Law Inst. 313.) "Special and important reasons" imply a reach to a problem beyond the academic or the episodic. This is especially true where the issues involved reach constitutional dimensions, for then there comes into play regard for the Court's duty to avoid decision of constitutional issues unless avoidance becomes evasion. Cf. the classic rules for such avoidance stated by Mr. Justice Brandeis in *Ashwander* v. *Tennessee Valley Authority*, 297 U. S. 288, 341.

In the present case, certiorari was granted, according to our practice, because at least four members of the Court deemed that despite the rather unique circumstances of this case Iowa's willingness to enforce this restrictive covenant rendered it "special and important."

We were unmindful at the time of Iowa's corrective legislation and of its implications. While that statute had been cited in the opinion of the Iowa Supreme Court, without quotation, in tangential support of a substantive argument, and while similar passing references appear in respondent's briefs in opposition to the petition and on the merits, it was not even suggested as a ground for opposing the grant. Its importance was not put in identifying perspective, and it did not emerge to significance in the sifting process through which the annual hundreds of petitions for certiorari pass. Argument at the Bar was concerned with other issues and the even division of the Court forestalled that intensive study attendant upon opinion-writing which might well have revealed the crucial relevance of the statute.

These oversights should not now be compounded by further disregard of the impact of this enactment when viewed in the light of settled Iowa law, not previously brought to our attention, concerning its effect upon private litigation. The statute provides:

"SECTION 1. Any corporation or other form of organization organized or engaging in the business under the laws of the state of Iowa, or wheresoever organized and engaging in the business in the state of Iowa, of the ownership, maintenance or operation of a cemetery . . . except . . . churches or religious or established fraternal societies, or incorporated cities or towns or other political subdivisions of the state of Iowa . . . shall be subject to the provisions of this chapter.

.        .        .        .        .

"SEC. 8. It shall be unlawful for any organization subject to the provisions of this chapter to deny the privilege of interment of the remains of any deceased person in any cemetery . . . solely because

of the race or color of such deceased person. Any contract, agreement, deed, covenant, restriction or charter provision at any time entered into, or by-law, rule or regulation adopted or put in force, either subsequent or prior to the effective date of this chapter, authorizing, permitting or requiring any organization subject to the provisions of this chapter to deny such privilege of interment because of race or color of such deceased person is hereby declared to be null and void and in conflict with the public policy of this state. . . .

"SEC. 9. Any person, firm or corporation violating any of the provisions of this chapter, shall, upon conviction, be punishable by a fine of not less than twenty-five dollars ($25.00) nor more than one hundred dollars ($100.00).

.      .      .      .      .

"SEC. 12. Nothing in this Act contained shall affect the rights of any parties to any pending litigation.

.      .      .      .      .

"Approved April 21, 1953." Iowa Laws 1953, c. 84; Iowa Code Ann. (1954 Cum. Supp.) § 566A. 1–11.

As a result of this Act, in any other case arising under similar circumstances not only would the statutory penalties be applicable, but also, under Iowa law, one in petitioner's position would be entitled to recover damages in a civil action based on a violation of the statute. See *Humburd* v. *Crawford,* 128 Iowa 743, 105 N. W. 330; *Brown* v. *J. H. Bell Co.,* 146 Iowa 89, 123 N. W. 231, 124 N. W. 901; *Amos* v. *Prom, Inc.,* 117 F. Supp. 615 (D. C. N. D. Iowa).

Had the statute been properly brought to our attention and the case thereby put into proper focus, the case would have assumed such an isolated significance that it would

hardly have been brought here in the first instance.[1] Any adjudication of the constitutional claims pressed by petitioner would now be an adjudication under circumstances not promotive of the very social considerations which evidently inspired the Iowa Legislature to provide against the kind of discrimination of which complaint is here made. On the one hand, we should hesitate to pass judgment on Iowa for unconstitutional action, were such to be found, when it has already rectified any possible error. On the other hand, we should not unnecessarily discourage such remedial action by possible condonation of this isolated incident. Moreover, the evident difficulties of the case suggest that, in the absence of compelling reason, we should not risk inconclusive and divisive disposition of a case when time may further illumine or completely outmode the issues in dispute.

Such factors are among the many which must be weighed in the exercise of that "sound judicial discretion" which Rule 19 requires. We have taken this opportunity to explain their relevance, when normally, for obvious reasons in view of our volume of business, no opinion accompanies dismissal of a writ as improvidently granted, because of the apt illustration here provided of the kinds of considerations, beyond those listed by Rule 19 as illustrative but not exhaustive, which preclude adjudication on the merits of cases which may have the surface appearance of public importance.

We are therefore of the opinion that this Court's order of November 15, 1954, affirming by an equally divided Court the decision of the Iowa Supreme Court, must be vacated and the writ of certiorari dismissed as improvidently granted. There is nothing unique about such

---

[1] Cf. *District of Columbia* v. *Sweeney,* 310 U. S. 631, where certiorari was denied "in view of the fact that the tax is laid under a statute which has been repealed and the question is therefore not of public importance."

78

dismissal even after full argument. There have been more than sixty such cases and on occasion full opinions have accompanied the dismissal.[2]  The circumstances of this case may be different and more unusual.  But this

[2] *United States* v. *Rimer,* 220 U. S. 547; *Furness, Withy & Co.* v. *Yang-Tsze Ins. Assn.,* 242 U. S. 430; *Tyrrell* v. *District of Columbia,* 243 U. S. 1; *Houston Oil Co.* v. *Goodrich,* 245 U. S. 440; *Layne & Bowler Corp.* v. *Western Well Works, Inc.,* 261 U. S. 387; *Southern Power Co.* v. *North Carolina Pub. Serv. Co.,* 263 U. S. 508; *Keller* v. *Adams-Campbell Co.,* 264 U. S. 314; *Davis* v. *Currie,* 266 U. S. 182; *Erie R. Co.* v. *Kirkendall,* 266 U. S. 185; *Southern California Edison Co.* v. *Herminghaus,* 275 U. S. 486; *Mellon* v. *McKinley,* 275 U. S. 492; *Missouri-K.-T. R. Co.* v. *Texas,* 275 U. S. 494; *Ellison* v. *Koswig,* 276 U. S. 598; *Johnson* v. *Thornburgh,* 276 U. S. 601; *Carter Oil Co.* v. *Eli,* 277 U. S. 573; *Standard Pipe Line Co.* v. *Commissioners,* 278 U. S. 558; *Seaboard Air Line R. Co.* v. *Johnson,* 278 U. S. 576; *New York, Chicago & St. L. R. Co.* v. *Granfell, ibid.; Empire Gas & Fuel Co.* v. *Saunders,* 278 U. S. 581; *Virginian R. Co.* v. *Kirk,* 278 U. S. 582; *Wallace* v. *Motor Products Corp.,* 279 U. S. 859; *Sutter* v. *Midland Valley R. Co.,* 280 U. S. 521; *Anglo & London-Paris Nat. Bank* v. *Consolidated Nat. Bank,* 280 U. S. 526; *Gulf, Mobile & N. R. Co.* v. *Williams, ibid.; Wisconsin Electric Co.* v. *Dumore Co.,* 282 U. S. 813; *Adam* v. *New York Trust Co.,* 282 U. S. 814; *Director of Lands* v. *Villa-Abrille,* 283 U. S. 785; *Sanchez* v. *Borras,* 283 U. S. 798; *Elgin, Joliet & E. R. Co.* v. *Churchill,* 284 U. S. 589; *Snowden* v. *Red River Drainage Dist.,* 284 U. S. 592; *Lang* v. *United States,* 286 U. S. 523; *Franklin-American Trust Co.* v. *St. Louis Union Trust Co.,* 286 U. S. 533; *Louisville & Nashville R. Co.* v. *Parker,* 287 U. S. 569; *Sevier Commission Co.* v. *Wallowa Nat. Bank,* 287 U. S. 575; *Fort Smith Sub. R. Co.* v. *Kansas City So. R. Co.,* 288 U. S. 587; *Boynton* v. *Hutchinson Gas Co.,* 292 U. S. 601; *Lynch* v. *New York,* 293 U. S. 52; *Hunt* v. *Western Casualty Co.,* 293 U. S. 530; *Fox Film Corp.* v. *Muller,* 294 U. S. 696; *State Automobile Ins. Assn.* v. *Glick,* 294 U. S. 697; *Moor* v. *Texas & N. O. R. Co.,* 297 U. S. 101; *Texas & N. O. R. Co.* v. *Neill,* 302 U. S. 645; *Aetna Ins. Co.* v. *Illinois Central R. Co.,* 302 U. S. 652; *Tax Commission* v. *Wilbur,* 304 U. S. 544; *Goodman* v. *United States,* 305 U. S. 578; *Goins* v. *United States,* 306 U. S. 622; *McGoldrick* v. *Gulf Oil Corp.,* 309 U. S. 2; *Utilities Ins. Co.* v. *Potter,* 312 U. S. 662; *Harris* v. *Zion's Savings Bank,* 313 U. S. 541; *Jones* v. *Opelika,* 315 U. S. 782;

impressive practice proves that the Court has not hesitated to dismiss a writ even at this advanced stage where it appears on further deliberation, induced by new considerations, that the case is not appropriate for adjudication. In the words of Mr. Chief Justice Taft, speaking for a unanimous Court:

> "If it be suggested that as much effort and time as we have given to the consideration of the alleged conflict would have enabled us to dispose of the case before us on the merits, the answer is that it is very important that we be consistent in not granting the writ of certiorari except in cases involving principles the settlement of which is of importance to the public as distinguished from that of the parties, and in cases where there is a real and embarrassing conflict of opinion and authority between the circuit courts of appeal." *Layne & Bowler Corp.* v. *Western Well Works, Inc.,* 261 U. S. 387, 393.

The petition for rehearing is granted. The order of this Court of November 15, 1954, affirming by necessity the

---

*Gorman* v. *Washington University,* 316 U. S. 98; *McCullough* v. *Kammerer Corp.,* 323 U. S. 327; *McCarthy* v. *Bruner,* 323 U. S. 673; *White* v. *Ragen,* 324 U. S. 760; *Woods* v. *Nierstheimer,* 328 U. S. 211; *Phyle* v. *Duffy,* 334 U. S. 431; *Hedgebeth* v. *North Carolina,* 334 U. S. 806; *Superior Court* v. *Lillefloren,* 335 U. S. 906; *Loftus* v. *Illinois,* 337 U. S. 935; *Parker* v. *Los Angeles,* 338 U. S. 327; *Hammerstein* v. *Superior Court,* 341 U. S. 491; *Stembridge* v. *Georgia,* 343 U. S. 541; *Edelman* v. *California,* 344 U. S. 357; *Bentsen* v. *Blackwell,* 347 U. S. 925; *California ex rel. Brown* v. *St. Louis Union Trust Co.,* 348 U. S. 932. This list is not to be deemed comprehensive.

Only in the light of argument on the merits did it become clear in these numerous cases that the petitions for certiorari should not have been granted. In some instances an asserted conflict turned out to be illusory; in others, a federal question was wanting or decision could be rested on a non-federal ground; in a number, it became manifest that the question was of importance merely to the litigants and did not present an issue of immediate public significance.

judgment of the Supreme Court of Iowa is vacated and the writ of certiorari is dismissed as improvidently granted.

*It is so ordered.*

Mr. Justice Harlan took no part in the consideration or decision of this case.

Mr. Justice Black, with whom The Chief Justice and Mr. Justice Douglas join, dissenting.

We think that only very unusual circumstances can justify dismissal of cases on the ground that certiorari was improvidently granted. Our objections to such dismissals are stronger when, as here, a case has already been argued and decided by the Court. We do not agree that the circumstances relied on by the Court justify this dismissal. We granted certiorari because serious questions were raised concerning a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment. Those questions remain undecided. The Court dismisses the case because the Iowa Legislature has provided that every person in Iowa except one who has already filed a suit can prosecute claims like this. Apparently this law leaves everyone in Iowa free to vindicate this kind of right except the petitioner. This raises a new question of denial of equal protection of the laws equally as grave as those which prompted us to take this case originally. We cannot agree that this dismissal is justified merely because this petitioner is the only one whose rights may have been unconstitutionally denied.