Noel ROACH, Plaintiff,

v.

HAPAG–LLOYD, A.G., Defendant and Third-Party Plaintiff,

v.

CRESCENT WHARF & WAREHOUSE CO. et al., Third-Party Defendants.

No. C–71 1850 ACW.

United States District Court, N. D. California.

May 9, 1973.

**482**

Walkup, Downing, Sterns & Poore by Ralph W. Bastian, Jr., San Francisco, Cal., for plaintiff.

Graham & James by Paul A. Dezurick, San Francisco, Cal., for Hapag-Lloyd, A. G.

Sedgwick, Detert, Moran & Arnold by Kevin Dunne, San Francisco, Cal., for third-party defendant Peiner.

Brobeck Phleger & Harrison by Jeffrey S. Kingston, San Francisco, Cal., for third-party defendants Crescent Wharf & Warehouse Co. and others.

## ORDER GRANTING MOTION TO DISMISS THIRD PARTY COMPLAINT AGAINST PEINER MASCHINEN UND SCHRAUBENWERKE

WOLLENBERG, District Judge.

Plaintiff, a longshoreman, was allegedly engaged in unloading the MV WOLFSBURG, owned by defendant Hapag-Lloyd (Hapag), a German corporation, when part of the cargo being removed from the vessel by crane fell to the deck, injuring him. The goods that fell were themselves crane parts, manufactured and packaged by third party defendant Peiner Maschinen Und Schraubenwerke, a German corporation (Peiner). Hapag filed a third party complaint against Peiner on December 14, 1972. That complaint tenders the defense of the plaintiff's complaint to Peiner. In addition, Hapag alleges that Peiner had a duty and obligation owed to defendant "to exercise ordinary care to properly and safely manufacture and package and furnish the equipment in question, for carriage, loading, discharge and handling in connection therewith." Hapag also alleges that "PEINER impliedly undertook and warranted to defendant that the manufacture and packaging of the shipment in question was fit, safe and proper and accomplished in a safe, proper and workmanlike manner, and that it would indemnify defendant for any loss or detriment sustained by it resulting from a breach of such undertaking."

Peiner moves to dismiss the third party complaint as to it on the grounds that the Bill of Lading, executed in West Germany, provides in ¶2 that: "Any dispute arising under this bill of lading shall be decided by the Hamburg courts." In the alternative, Peiner moves for a more definite statement.

Hapag defends on the grounds that (1) the choice of forum clause is invalid; (2) even if valid, the clause should not be given effect in this case; and (3) the bill of lading does not apply to claims stated for breach of implied warranty and negligence which are properly before this Court.[1]

*Validity of the Bill of Lading Provision*

Peiner relies primarily upon Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) as authority for enforcement of the choice of forum clause in ¶2. That case involved a contract between American and German corporations for the towing of a drilling rig from Louisiana to Italy. The contract contained a clause providing for litigation of any dispute in the High Court of Justice in London. Problems arose before the rig left the Gulf of Mexico, and the rig was towed to Tampa, Florida for refuge. An action to recover damages to the rig was brought in federal district court, despite the forum selection clause. The district court declined to dismiss for lack of jurisdiction, and the Court of Appeals affirmed. The Supreme Court, after setting forth policy considerations inherent in international commercial dealings, reversed. The Court held that forum selection clauses should be enforced unless the party seeking to have the clause declared void can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." 407 U.S. at 15, 92 S.Ct. at 1916.

Hapag contends initially that the rule of *Bremen* does not apply to bills of lading which are governed by the Carriage of Goods at Sea Act (COGSA), 46 U.S.C. § 1303(8). That section provides that:

"Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from neglience, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect . . . ."

Hapag correctly points out that the contract in *Bremen* did not arise under COGSA, 407 U.S. at 10 n. 11, 92 S.Ct. 1907. Moreover, the square holding of the court in Indussa Corp. v. S. S. Ranborg, 377 F.2d 200 (2d Cir. 1967) (en banc) in overruling Wm. H. Muller & Co. v. Swedish American Line Ltd., 224 F.2d 806 (2d Cir.), cert. denied, 350 U. S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955), is that:

"Congress meant to invalidate any contractual provision in a bill of lading for a shipment to or from the United States that would prevent cargo able to obtain jurisdiction over a carrier in an American court from having that court entertain the suit and apply the substantive rules Congress had prescribed. . . . Congress outlawed clauses prohibiting American courts from deciding causes otherwise properly before them." (377 F.2d at 204).

In so holding, the court indicated that even if a foreign tribunal would apply COGSA, requiring an American plaintiff to assert his claim only in a distant court "lessens the liability of the carrier quite substantially, particularly when the claim is small." 377 F.2d at 203. *Cf.* Carbon Black Export, Inc. v. The Monrosa, 254 F.2d 297 (5th Cir. 1958), cert. dismissed, 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723, rehearing denied 359 U.S. 999, 79 S.Ct. 1115, 3 L.Ed.2d 986 (1959); Insurance Co. of North America v. N. V. Stoomvaart-Maatschappij "Oostzee", 201 F.Supp. 76 (D.C.La. 1961).

1. The question of whether Hapag has potential causes against Peiner apart from ¶ 16 of the Bill of Lading is a question of German law for the Hamburg courts. Hence, the Court rejects Hapag's third contention.

The rule of the Second Circuit in *Indussa Corp.*, has not been extensively followed. Other courts have upheld forum selection clauses, despite COGSA. *See, e. g.*, Amicale Industries, Inc. v. S. S. Rantum, 259 F.Supp. 534 (D.C.S.C. 1966); Aetna Insurance Co. v. The Satrustegui, 171 F.Supp. 934 (D.C.Puerto Rico 1959). The Ninth Circuit has not been called upon to rule on this issue.

Although the rule set forth in *Indussa Corp.*, made possible a result consistent with the policies of § 1303(8) in that case, application of the rule, that forum selection clauses in bills of lading are per se invalid, in the present case would not be equally efficacious. The third party complaint does not involve damage to cargo covered by the bill of lading, but rather, indemnification for injury to a longshoreman. Hence, § 1303(8), on its face, does not apply to this case. Moreover, unlike the case of an American shipper suing a foreign carrier for damages, the third party complaint is a suit by one German corporation against another. The concern of the court in *Indussa* for plaintiffs who may be required to assert their claims in distant courts is not involved in the present case. To the contrary, it is the shipper, who is sought to be protected by § 1303(8), who will be required to come to a distant court to assert its defense *unless*, the forum selection clause is given effect. Application of the rule in *Indussa Corp.*, to this case may, consequently, "lessen[s] the liability of the carrier quite substantially . . . ." in contravention of the policies of § 1303(8). For these reasons, the Court declines to follow the rule set forth in *Indussa Corp.*

■ If, as the previous discussion indicates, § 1303(8) does not invalidate the forum selection clause in this case, the Court must apply the test set forth in *Bremen* to determine whether the exercise of jurisdiction over the third party complaint is appropriate. Since there is no contention that ¶2 is void for reasons such as fraud or overreaching, the burden is on Hapag to show that enforcement of the clause would be unreasonable and unjust.

■ The prima facie validity of the clause in this case is buttressed by the fact that the forum selected is in Germany, and both Hapag and Peiner are German corporations. The bill of lading was signed in Germany. Moreover, Peiner contends that since the allegations of the third party complaint set forth various breaches of duty in regard to manufacturing and packaging of the goods, which occurred in Germany, it is reasonable to try the issues of liability there.

Hapag, on the other hand, relies primarily upon the fact that the complaint arises out of its defense of an action scheduled for trial in this Court. The accident and injury to plaintiff occurred in San Francisco, and plaintiff argues that all known witnesses to the accident are residents of the Bay Area, and not subject to process to compel their attendance at trial in Germany.

The Court feels that the reasonableness of enforcing the forum selection clause in this case is an extremely close question. Nevertheless, the test set forth in *Bremen* requires that the party challenging the forum clause "clearly show" that enforcement would be unreasonable and unjust. Hapag has not carried its burden sufficiently, and the motion to dismiss is, therefore, granted.